## MISCONDUCT OF COUNSEL TOWARD WITNESSES.

### The Cleveland, Painesville & Eastern Railroad Co. v. Pritschau.

#### 69 Ohio State—Decided, January 19, 1904.

*Trial of Issues of Fact to Jury—Duty of Judge as to Misconduct of Counsel Toward Witnesses—Permission of Misconduct by Counsel is Error, When—Misconduct of Counsel Cause for Reversal of Judgment—Unless Averted by Retraction—Court Procedure.*

1. Upon the trial of issues of fact to a jury, it is the duty of the trial judge to prevent such misconduct on the part of counsel toward witnesses as tends to the suppression of the truth, all declarations of fact by counsel during the introduction of evidence, the repetition of incompetent questions to which objections have been sustained, and all comments upon the evidence until the time for argument has arrived.

2. The permission of such misconduct by counsel for the prevailing party against objection by his adversary is error for which a judgment should be reversed, unless it affirmatively appears that, by instructions from the court, or retraction by counsel, or both, the prejudicial tendency of the misconduct has been averted.

Error to the Circuit Court of Cuyahoga County.

Mrs. Pritschau brought suit in the court of common pleas against the railroad company to recover on account of personal injuries which she sustained while a passenger on one of its cars, the injury resulting from collision with another car, alleged to be caused by the negligence of the company. Upon issues joined the cause was tried to a jury, the trial resulting in a verdict in her favor for $2,291. The company's motion for a new trial was overruled, and a judgment was rendered in her favor which, on petition in error, was affirmed by the circuit court. Her right to recover compensation for her injuries is not now disputed. The only question before us respects the amount of her recovery, which is alleged to be excessive, and a reversal is sought because of misconduct of her counsel upon the trial of the cause. The record is voluminous and many of its pages are devoted to recounting interruptions by her counsel, protests by his adversary, and observations of the court with respect thereto. A statement of all these instances would unduly expand this report. The grounds of complaint

may be regarded as represented by a few of the instances taken from the record.

The record before us was made upon the second trial of the case. While counsel for the company was cross-examining the plaintiff herself with respect to the extent. of her injuries, he inquired of her whether she did not receive a caller in her parlor upon the evening of the day of her injury. She answered that she did not. Whereupon her counsel interrupted by saying: "That was all blown up ' before." Counsel further inquired of her whether she sent for a physician upon the day of the accident, whereupon her counsel observed: "I object; you might as well ask her if she blew her nose." In her further cross-examination with respect to her testimony upon the former trial, her counsel interrupted; whereupon the counsel for the company objected to the interruption, and the court observed: "It seems to disturb counsel on the other side, so counsel ought not to interfere." Mr. Kerruish: "I am interfering in the interest of economy of time and good sense." Upon her further cross-examination with respect to her occupation after the accident, she was inquired of whether she did not keep boarders during a portion of the time; and her counsel, upon re-examination, observed: "I want to clean these boarders out; wipe them out all together. Well, we have exterminated the boarders." Having admitted upon her cross-examination that she had walked about the village of her residence, she was inquired of by adversary counsel whether she limped upon those occasions. She answered: "Why, I limped from being lame, of course; it makes a person limp." Whereupon the following colloquy occurred: Mr. Kerruish—"I think there is a nigger in the fence about that thing myself." Mr. Henry—"I object to that." Mr. Kerruish—"She has been limping ever since. Now he wants to know whether she limped."

Another witness for the plaintiff, upon cross-examination was inquired of, whether, in view of his former relation he did not feel particularly kind toward the plaintiff. Whereupon her counsel interrupted: "Well, isn't it creditable to her?" Upon the direct examination of a witness for the plaintiff, her counsel propounded a question, assuming a state of facts which no evidence tended to establish, and further assuming that the witness had knowledge thereof. Adversary counsel objected and

asked the court to rebuke counsel for propounding a question of that character. Whereupon the court said: "Well, I think I will administer the rebuke to counsel because you are assuming that this witness knows things; there is no evidence as yet tending to show any such thing, and I think you are very much out of order." Mr. Kerruish: "Just a word on that point: Nobody knows better than I how to deport myself, but inasmuch as this gentleman imputed to me an improper motive, I thought I might inquire of him the things I know he knows." Upon the cross-examination of another witness who had been called on behalf of the defendant, inquiry was made respecting the professional standing of one of the physicians who had attended the plaintiff. Mr. Kerruish interrupted as follows: "Now, it is perfectly evident what kind of business they have been in down at Irondale, peeking into things of that sort."

Upon the examination of a medical witness who had been called by the defendant, plaintiff's counsel inquired of him why he had been selected to make an examination to which he had testified. He answered: "Well, don't ask me why he selected me, ask him." Whereupon plaintiff's counsel observed: "Well, I know, and so does everybody else; I don't care much, I simply wanted you to acknowledge it, that is all." Upon the cross-examination of a very young lady, who had been called as a witness by the defendant, plaintiff's counsel saw fit to examine her upon the subject of her familiarity with the city of Cleveland. She answered that she had been there about a month and was sick during the entire time. Whereupon counsel interrupted: "I don't care about your sickness; the least said about that the better." An objection by defendant's counsel was sustained by the court and plaintiff's counsel interposed: "We will pass over the sickness charitably. I put it upon charitable grounds." Upon the cross-examination of another physician who had been called by the defendant, plaintiff's counsel inquired of him as to the mode of ascertaining differences in the lengths of injured limbs. Upon receiving the answer of the witness counsel interposed: "By gracious, that was done splendidly." Upon objection the counsel further said: "I thought it was complimentary to the witness." Upon the cross-examination of another witness, a woman, who had been called by the defendant, plaintiff's counsel interrupted his own cross-

examination to say: "Now, you are getting into tangles here of the worst kind." Upon objection by counsel for the defendant plaintiff's counsel observed: "I guess your woman isn't telling the truth and you know it." Upon the cross-examination of another witness, respecting a supposed conversation with another person, the witness said she had no recollection of it. Whereupon plaintiff's counsel interrupted his own cross-examination to say: "I will have to fix the time and place and blow you up on that." Upon the cross-examination of the same witness, he inquired of her as to her failure to recognize the plaintiff upon an occasion referred to, and then inquired whether it was in consequence of a failure of the witness' observation or a change in the appearance of the plaintiff. The witness answered, "I think perhaps it was a little of both." Counsel thereupon interrupted himself to say: "Now, that is sensible; I like your style first rate, that is nice." Upon objection by adversary counsel, plaintiff's counsel observed: "Won't you let me compliment your witness when she is deserving of it?" Upon the examination of another witness called by the defendant, she was inquired of as to the origin of a written statement which she had signed, the inquiry being whether it was writen in her presence. Counsel for the plaintiff objected; and, upon the suggestion of his adversary, "it is in your favor," he replied: "I don't want any of her favors. I think, Your Honor, that they should be reprimanded for bringing a witness like this into court. If it was two hundred years ago it would be punished." Upon the cross-examination of another witness called by the defendant, no evidence of any improper conduct on its part having appeared, counsel for the plaintiff inquired: "Well, do you know any of the crowd that have been trying to defeat this woman of her rights?" Upon the calling of Mr. F. A. Henry as a witness for the defendant, before any testimony had been given by him, plaintiff's counsel interrupted to say: "I am willing to admit that Mr. Henry will swear to anything that is necessary here."

In response to objections to the numerous interruptions and improprieties of counsel for the plaintiff, of which a few are embraced in the foregoing statement, the court made many observations whose nature and effect are indicated by the following selections. Upon being called upon by counsel for the de-

fendant to sustain an objection to an improper question, and to require counsel to desist from an improper course of examination, the court said: "Oh, I think I have done all I can do; I sustain the objection." Again, "I think counsel is in fault in indulging in too many statements, a habit that counsel has got into in thirty years of practice, to interject in your arguments for the purpose of getting advantage with the jury. You are not conscious of it, but others notice it, and I notice it, and it is that the other side object to." "That was wholly out of order, Mr. Kerruish, it is not promptd by any desire to gain advantage but by force of inveterate habit." Mr. Kerruish: "I think it is a good habit." Court: "No, I think it is a bad habit." "The jury will disregard the statements of counsel as to whether the witness is telling the truth or not. I think we ought to have no interruptions and no comments at all." "Well, it doesn't seem to have any effect; I have endeavored to rebuke counsel several times." "I have repeatedly admonished counsel, but it don't avail very much against the habits of forty years." "I have said a great many times there ought not to be any interference at all; the only thing to do is to object if you do object." Another time, when called upon to admonish counsel, the court said: "I have done that so much, I am getting tired of doing the same thing over and over again. Now repeat the question." Upon a similar request the court said: "I do not think I will do that; I have done that so much that I am getting tired of it."

*Ford, Snyder, Henry & McGraw,* for plaintiff in error.

*W. S. Kerruish,* for defendant in error.

SHAUCK, J.; BURKET, C. J., DAVIS, PRICE and CREW, JJ., concur.

The record before us contains the solemn assurance that the repeated and prolonged scenes of disorder which it describes, occurred upon "the trial of this cause." Adopting the euphemism, the trial was made to last through more than two weeks, obviously to the waste of most of the time so employed, and to the great discredit of the administration of justice. But these evils are accomplished and irremediable; and we have only to determine whether the law requires the plaintiff in error to submit to a result so reached. The determination of that

question will not only justify, but require some observations which might seem too obvious to be entitled to a place in a treatise on the conduct of trials. It is the requirement of the law that issues of fact, in so far as they depend on oral testimony, shall be determined upon the testimony of witnesses who speak under the obligations of an oath, and who are subject to cross-examination. It is also required by established general rules, to which the issues of this case present no exceptions, that statements of fact, to influence the verdicts of juries, must be from the personal knowledge of the witnesses, and that mere hearsay and inference must be excluded. All of these requirements were disregarded in numerous instances presented by the record. On the trial counsel for the prevailing party, during that portion of the trial which, in orderly inquiry, is devoted to the introduction of evidence, made statements purporting to present facts, some of the statements being in corroboration of the testimony of witnesses, some of them being of matters which were not otherwise suggested in the case. The instances in which statements of facts were followed by questions, not for the purpose of eliciting such facts as were in the knowledge of the witnesses, but to mislead the jury as to the facts in evidence, are subject to the same criticism.

The order of trial prescribed by Section 5190, Revised Statutes, does not differ in any respect, which is here material, from that which had been pursued before the enactment of the statute. But since the General Assembly has thought the order of sufficient importance to be a proper subject for legislation, there is added reason for adhering to the order which it prescribes. The section definitely provides that counsel shall not be heard in argument until all the evidence has been introduced. Manifest disregard of this order of trial appears in some of the comments of counsel which were made during the introduction of evidence, and which are presented in the statement of the case, and in many others which are not included in the statement. Not only were these comments untimely, but some of them were of such character that they should not have been permitted at any time. Certainly there is, and must be, much latitude allowed to counsel in argument when the time for argument has arrived; but the ridiculing of uneducated witnesses because of their ungrammatical speech, and the offer-

ing of insults to others without cause afforded in the case, should be forbidden as tending to the suppression of the truth. The repetition of incompetent inquiries, to which objection had been sustained, was for the obvious purpose of eliciting a repetition of the objection and to prejudice the case in the estimation of the jury. It should need no comment to show that the purpose which prompted such conduct called for its complete and immediate suppression.

It is suggested that the conduct of counsel was so grossly violative of propriety and decorum that it probably had the effect to offend the jury and to secure for his client a smaller verdict than would otherwise have been returned. That suggestion should not be permitted to control our judgment. If it be assumed that the orderly administration of justice is not to be insisted upon, and that the truth may, by accident, be evolved from such scenes as were here enacted, it is sufficient that the misconduct of counsel was, in its natural effect, prejudicial to the rights of the plaintiff in error, and it does not appear from the record that it did not, in fact, result in such prejudice. An examination of the cases cited, and others, justifies the conclusion that for such misconduct, and even for that which is less flagrant, judgments are always reversed, unless it is made to appear that its natural effect has been averted by court or counsel, or both. It is due to differences in the character of the misconduct rather than to differences of opinion in reviewing courts that it has, in some cases, been held that the effect of misconduct may be eliminated by instructions, and in others that it can not be. In this case the final instructions to the jury were silent upon the subject. Throughout the record a trial judge, personally distinguished for learning and probity, appears as a grieved observer of continued improprieties which he thought himself powerless to suppress. It is entirely clear that he was unable to end them by admonition and entreaty, but he was clothed with ample power to suppress them inexorably. The county in which he sat has the complement of county buildings. From the body of the people a few are selected as members of the bar because their qualities are supposed to authorize the expectation that they will render important aid in the administration of justice. Some prime mistakes in the selection are remediable. If the court had sus-

tained the motion for a new trial it would have been a too long deferred recognition of the rights of the plaintiff in error, though it would have made this proceeding in error unnecessary. That it should have been sustained is obvious. But it is much more important to observe that the trial judge should not have permitted such conduct on the part of counsel as would result in a mistrial. This was due not only to the parties to the suit, but to the public. But few pages of this record had unfolded when there was a manifest occasion for continuing the cause and dealing with offending counsel according to his deserts. The observations of the trial judge, from time to time, show that he had an intelligent appreciation of the gravity of the offenses which were committed before him. Why he thought it less important to suppress them than to give correct instructions to the jury as to the law of the case, does not appear. In a comparison of causes, a mistrial because of an erroneous view of the legal rights of the parties would be entitled to more charitable consideration. The suggestion by the trial judge that a course of toleration was chosen because of the inveteracy of counsel's habit acquired in forty years of similar practice, was most unfortunate. Is it necessary to say that there can be no prescriptive right to hinder the administration of justice by conduct which squanders time and leads to mistrials? Can the suggested discrimination against younger members of the bar be justified or even tolerated?

It is required by the reasons involved and by the decided cases that the judgments of the court of common pleas and the circuit court be reversed, and the cause remanded to the former court for a trial according to law.

*Reversed.*